## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JAMIE LYNN FORD,**

     **Plaintiff,**

**vs.**                                                                 **Civil No.  99-0844 MV/RLP**

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

     **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

### Administrative Background

1.      Plaintiff, Jamie Lynn Ford, (Plaintiff herein), sustained injuries from a fall in March 1990.  She

applied for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits on

January 4, 1994, alleging disability caused by cervical sprain syndrome, migraine headaches and

depression.  (Tr. 26, 29, 64, 72).  At issue is whether she is entitled to benefits for a closed period

from September 3, 1993, through August 24, 1997.[2]  (Tr. 298).

2.      Plaintiff's applications for DIB and SSI were denied initially and on reconsideration.  (Tr. 32-

42).  On September 18, 1996, an Administrative Law Judge (ALJ) ruled that she was not disabled,

finding that despite cervical sprain and migraine headaches, Plaintiff retained the residual functional

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

[2]Plaintiff previously sought benefits as of March 11, 1992, alleging disability caused by the same impairments.  Her applications were denied by an ALJ, whose decision was upheld by the District Court for the District of New Mexico and by the Tenth Circuit Court of Appeals.  (Tr. 207-224, 233).

capacity for sedentary work, not significantly reduced by a moderate degree of depression, and could therefore return to her past relevant work as a secretary.  (Tr. 9-18).

3.      Plaintiff was  evaluated by a psychologist, Dr. Harry Linneman, on December 10, 1996, and his report was provided to the Appeals Council.  (Tr. 320-330).    The Appeals Council initially declined to review the ALJ's decision.  (Tr. 3-4).  Plaintiff then sought review in the District Court for the District of New Mexico[3].  During the pendency of that case, Plaintiff and Defendant agreed to a remand pursuant to sentence four, 42 U.S.C. §405(g).   Under the terms of the remand, Defendant was to consider and evaluate  Dr. Harry Linneman's report in light of the holding in *Cruse v. U.S. Department of Health & Human Services*, 49 F.3d 614, 618 (10th Cir. 1995), update the record and obtain any necessary vocational expert testimony. (Tr. 316-317).

4.      A second hearing before an ALJ was conducted on October 15, 1998  (Tr. 296-315) in order to evaluate Plaintiff's mental condition.[4]  On December 22, 1998, the ALJ held that despite her exertional and non-exertional impairments, Plaintiff retained the residual functional capacity for sedentary to light[5] unskilled work.  He then applied the Medical-Vocational Guidelines (grids), and determined that Plaintiff was not disabled.  The Appeals Counsel declined review.  Plaintiff again seeks review in the District Court.

---

[3]*Ford v. Apfel*, No. CV 97-1403 JC/JHG.

[4]ALJ:   ". . . (W)hat we're going to do is take the necessary steps in order to evaluate your mental condition pursuant to Dr. Harry Lineman's (phonetic) psychological evaluation of December 10, 1996, and to put that determination into the decision in this case.  Is that right, Mr. Martone?

ATTY: "That's correct, Your Honor."  (Tr. 296-297).

[5]In his decision, the ALJ  stated that Plaintiff's exertional limitations had been established in the prior proceedings.  (Tr. 278).  Plaintiff does not challenge this determination.

2

**Legal Standard**

5.      The Commissioner's disability determinations are reviewed to determine (1) if the correct

legal principles have been followed,[6] and (2) if the decision is supported by substantial evidence.[7]

*See* 42 U.S.C. § 405(b); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*,

844 F.2d 748, 750 (10th Cir. 1988).  In this review, this court must "meticulously examine the record

and review it in its entirety."  Id.

**Facts**

6.      Plaintiff was born November 4, 1961.  (Tr. 26).  She obtained a GED in 1981 or 1982.  (Tr.

68, 230).  Plaintiff was injured in a fall in 1990.  (Tr. 101).  She had previously worked as a secretary

and office manager.  (Tr. 68, 230).

7.      On August 26, 1992, Plaintiff asked her treating physician to refer her to a psychiatrist.  (Tr.

138).  She was referred to John Bennett, II, M.D., who treated her for approximately six months.

(Tr. 136, 185).  Treatment included use of the anti-depressant Prozac, which Plaintiff found unhelpful

(Tr. 185), and which she discontinued prior to June 28, 1993. (Compare Tr. 129 with Tr. 127).  On

May 7, 1993, Dr. Bennett prepared a "Medical Assessment of Ability to do Work-Related Activities

(Mental), which is set out in Appendix A.  Plaintiff stopped seeing Dr. Bennett because she wasn't

---

[6]The Commissioner's decision will be reversed when he uses the wrong legal standards or fails to clearly demonstrate reliance on the correct legal standards.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

[7]"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Castellano v. Secretary of H.H.S., 26 F.3d 1027, 1028 (10th Cir. 1994).   "The finding of the (Commissioner) as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g). Substantial evidence is more than a scintilla but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Evidence is not substantial if it is overwhelmed by other evidence of record.  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).  In determining whether substantial evidence exists, the Court does not review the issues *de novo*, Sisco v. Dept. of H.H.S., 10 F.3d 739, 741 (10th Cir. 1993), reweigh the evidence or substitute its judgment for that of the Commissioner.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).   The Court's review will, however, involve a  meticulous examination of the entire record.  Williams, 844 F.2d at 750.

pleased with his services.  (Tr. 169).  His treatment records are not contained in the administrative record.

8.      In early 1994, the New Mexico Department of Vocational Rehabilitation [hereinafter "DVR"] initiated a rehabilitation plan for Plaintiff, that included psychotherapy to help with self confidence and family issues related to return to work  (Tr. 165, 170).  Plaintiff was evaluated by psychologist William M Polk, before psychotherapy was initiated.  (Tr. 184-186).  Dr. Polk described Plaintiff as alert, well oriented, in good contact with her surroundings, polite, cooperative, able to respond readily to questions, and to express her thoughts coherently and rationally.   Dr. Polk  diagnosed Depressive Disorder, NOS (not otherwise specified), of moderate severity.  He assigned a GAF (global assessment of functioning scale) of 60, indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., Revised, 1994, p. 32, [hereinafter *DSM-IV*].  In his April 4, 1994, report, Dr. Polk stated:

> The general impression is normal intellect.  She would appear to have a depressive disorder that began as an adjustment disorder to her injury, but has now become enduring and sustained by her current restricted routine and the dissatisfaction and disappointment she feels with herself and her life at this point.  There was no indication of a psychotic disturbance or delusional thinking.  The emotional stress and self-dissatisfaction undoubtedly exacerbate her physical discomfort and headaches in a closed loop, vicious circle type manner.  Further formal psychotherapy or medication would appear to be of questionable benefit, but a kind of supportive therapy and/or monitoring to encourage her to resume exercise and weight loss could be helpful.  Getting started on some type of training or work activity should also be helpful emotionally in terms of promoting a sense of purpose and direction. <u>Emotionally and cognitively she appears capable of starting off on some time (sic) of low stress, limited activity until she builds up her mental and physical stamina.</u> (Emphasis added).

(Tr. 186).

4

9.      Plaintiff was referred to a self esteem workshop in lieu of individual psychotherapy.  (Tr.

171).  She also started working with a job development firm, Coaching Unlimited, which arranged

several job interviews for her. (Tr. 187-191)  On April 15, 1994, Plaintiff turned down a job as a

receptionist, stating that "she would rather not work as receptionist and would like to find something

that might pay more."  (Tr. 188).   As of June 1994, she had stopped attending the self-esteem

workshop.  (Tr. 171).  On August 16, 1994, Plaintiff's vocational rehabilitation counselor made the

following notation:

> . . . She seems to be feeling good.  She said that she is doing exercises at home and
> her shoulder is feeling better.  She is doing some writing at home and we discussed
> this for a while.  Counselor directed her to Southwest Writers Workshop. Also her
> children are  receiving home schooling.

(Tr. 172).

10      Further attempts to place Plaintiff in a job were hindered because of problems with

transportation[8].  In December 1994 and on into early 1995, DVR recommended that she initiate a

home business in light of these problems, and because she continued to stay home during the day  to

school her children.  (Tr. 175, 179).  Plaintiff did attempt to work in 1996, obtaining employment as

a temporary office worker and as an aide in a nursing home.  She quit both jobs because of the

physical, not mental, demands.  (Tr. 301-303).  Plaintiff, with some assistance from DVR,  started

a family business in 1996, selling popcorn at special events.  (Tr. 305-308).  In putting the business

together, she did research, put together a business plan, submitted loan applications and obtained

loans.  She also assisted with sales and handled the business paperwork.

---

[8]Plaintiff lived in an area not served by public transportation, and she had let her driver's license
expire.  (Tr. 172-173).  Commencing in April 1994 and continuously thereafter, DVR records refer to
transportation difficulties as a impediment to obtaining employment.  (Tr.  170-175).

11.     Plaintiff was evaluated by Dr. Linneman on December 10, 1996.  (Tr. 321-328).  Plaintiff advised Dr. Linneman that she and her husband were operating the family business, that she was currently taking classes in business administration and that she continued to home school her children. Dr. Linneman noted that Plaintiff participated in a four hour interview without taking a break, was bright and articulate,  had problems remembering specifics related to her physical and mental conditions and complained of difficulty remaining motivated.

12.     Plaintiff  exhibited average or better cognitive function and good overall problem solving abilities on IQ testing.  (Tr. 323).  Her MMPI testing produced a profile "suggesting rather severe distress resulting from emotional and/or physical factors" with "a high degree of depression" which may cause her to exaggerate "the degree to which physical pain or discomfort interferes with her functioning." Id.  Dr. Linneman diagnosed Major Depression, recurrent, without psychotic features, a pain disorder associated with both psychological factors and a general medical condition, and assigned a GAF level of 48, indicative of serious symptoms or any serious impairment in social, occupational, or school functioning.  *DSM-IV,*  p 32.  He also prepared a "Medical Assessment of Ability to do Work-Related Activities (Mental), which is set out in Appendix B.

13.     Plaintiff sought treatment at the University of New Mexico Mental Health Center on April 30, 1997.  (Tr. 335-337).  She stated that she had received no medical treatment for two years, after her insurance coverage ended.  (Tr. 335).  Plaintiff exhibited symptoms consistent with major depression (depressed mood, decreased sleep, increased appetite, weight gain, recent but not current suicidal ideation, increased feelings of guilt, vegetative symptoms).  (Tr. 337).  The physician

diagnosed Major Depressive Disorder, recurrent[9], assigned a current GAF of 59, indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning, *DSM-IV* p 32, provided her with medication for insomnia and pain, and referred her to a counseling service. Id.

14.     Plaintiff's family business shut down in July 1997 when her husband obtained more lucrative work and Plaintiff decided to look for other employment.  (Tr. 310, 341).   She was hired by a video rental store approximately one month later, on August 25, 1997.  (Tr. 299-300, 309, 341).   She is in charge of inventory control, stocking, running a cash register, assisting customers, ordering candy and overseeing the crew on her shift.  (Tr. 341, 299).

## Issues

15.     Plaintiff seeks reversal of the Commissioner's decision on the following grounds:

   A.      The ALJ improperly discredited the opinions of Drs. Linneman and  Bennett, used improper reasoning and misrepresented the evidence, and

   B.      The ALJ's rejection of Plaintiff's credibility was contrary to law.

## Analysis

### The ALJ Applied Correct Legal Principles in His Evaluation of the Medical Evidence.

---

[9]The *DSM-IV* at 345 and 327 sets out the diagnostic criteria for Major Depressive Disorder, Recurrent. The diagnosis code is 296.3x. The last digit in the diagnosis code specifies the severity of the most recent Major Depressive Episode that forms part of the disorder.  The severity code ".x2" indicates "moderate."  A "moderate" Major Depressive Episode is one that has a severity between "mild" and "severe." DSM-IV at 376-77.  A "mild" Major Depressive Episode has "few, if any symptoms in excess of those required to make the diagnosis and symptoms result in only minor impairment in occupational functioning or in usual social activities or relationships with others." DSM-IV at 377.  A "severe" Major Depressive Episode is one that has "several symptoms in excess of those required to make the diagnosis, and symptoms markedly interfere with occupational functioning or with usual social activities or relationships with others."  DSM-IV at 378.  This diagnosis specified "moderate" severity.

16.     The ALJ did not afford weight to Dr. Bennett's opinion as to Plaintiff's functional limitations because they were not supported by contemporaneous treatment notes.  (Tr. 286).   Plaintiff complains that this is error because the ALJ at the prior hearing had promised to obtain the treatment notes.  This argument fails.  At the second administrative hearing, Plaintiff, through her attorney, advised the ALJ that the record could be closed.  (Tr. 314).  When a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997).  Plaintiff acceded to closing the evidence without the treatment records of Dr. Bennett.  Accordingly, I find that the ALJ was not required to obtain those records.

17.     The ALJ did not afford weight to Dr. Linneman's evaluation for three stated reasons; his conclusions regarding functional limitations:  (1) were primarily supported by the MMPI and subjective complaints, (2) were not based on a longitudinal treatment relationship, and (3),  were inconsistent with Plaintiff's reported activities.   Plaintiff complains that the ALJ erred because Dr. Linneman's report  was not brief or conclusory, because the MMPI is standardized psychological tests recognized by the Commissioner's regulations, and because one-time evaluations are entitled to consideration.   Plaintiff does not attempt to address the inconsistency between her reported activities and the level of limitation found by Dr. Linneman.

18.      Relying on her MMPI profile, Dr. Linneman expressed the opinion that Plaintiff had a fair ability (seriously limited but not precluded) to deal with work stresses.  (Tr. 326).  Based on one subtest in the WAIS-R, he expressed the opinion that she had  fair ability to maintain attention and concentration.  Id.  The ALJ found that this statement of limitation was conclusory, and he listed the activities Plaintiff engaged in which were inconsistent with these limitations:

I have not afforded Dr. Linneman's findings that Ms. Ford has sustained difficulty with concentration controlling weight because it is based upon the results of her MMPI (sic, WAIS-R) test.  Further, his findings are inconsistent when considering her activities of daily living, including writing a book, home schooling her children and starting an in-home business.

(Tr. 284).

. . . Ms. Ford testified that she went back to work for Blockbuster on August 25, 1997.  She testified that she easily found this job, was doing well and was promoted to Assistant Manager.  Further, with regard to the jobs Ms. Ford performed for short periods in 1996, it is clear she left these jobs for reasons related to her physical, not mental condition.  Moreover, in 1996 she put together a business plan to borrow money for a specialty popcorn business, obtained money and ran the business for a number of months.  This activity establishes that Ms. Ford possessed significant mental ability during this period even though she received no treatment or medication for mental problems.

(Tr. 287).

19.     The ALJ is required to "evaluate every medical opinion" he receives, §§20 C.F.R. 404.1527(d) & 416.927(d), and to "consider all relevant medical evidence of record in reaching a conclusion as to disability," *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996).  The ALJ did so. He cited to the opinion of Dr. Polk, who stated that Plaintiff had the ability to engage in low stress activity.  (Tr. 280, 186). He discussed his reasons for rejecting the opinion of Dr. Linneman.  (Tr. 284, 287).   In order to reach a conclusion contrary to that reached by the ALJ, I would be required to weigh the evidence, which I am not permitted to do.

20.     I also find that Plaintiff's contention that the ALJ  misrepresented the evidence is unfounded.  A review of the ALJ's decision and the administrative  record establishes that the ALJ exhaustively

reviewed and carefully considered the evidence before him.

### The ALJ Used Correct Legal Principles in His Evaluation of Plaintiff's Credibility.  His Decision to Discredit Plaintiff's Testimony Regarding the Extent of Her Mental Limitations Is Supported by Substantial Evidence.

21.     Finally, Plaintiff complains that the ALJ's evaluation of her credibility was fatally flawed by his reliance on Plaintiff's failure to seek psychological counseling and his erroneous assessment, based on a misrepresentation of the record, that she was  unmotivated to work.

22.     The ALJ listed several reasons for giving less than full credence to Plaintiff's complaints of functional limitation:

--     Despite allegations of depression, Plaintiff had not sought treatment of psychological problems after she ceased seeing Dr. Bennett;

--     Plaintiff had taken no psychotropic medication since 1993;

--     Plaintiff briefly held two jobs in 1996, quitting each because of physical, not mental, difficulties;

--     Plaintiff's reported activities of  home schooling her children,  writing a book and starting an in home business, were inconsistent with her claimed level of functional difficulty;

--     Plaintiff exhibited significant mental ability in 1996 when establishing a business, despite lack of any treatment for mental problems.

(Tr.283- 287).

23.     Courts have held that lack of treatment for mental impairment may not constitute the sole reason for  rejecting a claimant's credibility.  *See Tucker v. Sullivan*, 779 F. Supp. 1290, 1298 (D. Kan. 1990).   This is particularly true where the claimant, due to mental impairment, may not recognize the need for treatment.  *Id.*  In this case, there is substantial evidence that Plaintiff's failure to obtain treatment was not due to an inability to recognize the need therefor.  She sought psychiatric

treatment in 1992 and again in 1997. (Tr. 138, 335-337). She received treatment for depression (Tr. 168) and felt that depression was the cause of many of her difficulties. (Tr. 154). More importantly, however, the ALJ did not base his rejection of her credibility solely on her lack of mental health treatment. While accepting that Plaintiff had reduced mental residual functional capacity due to depression, he relied upon the quantity and quality of her activities in determining that depression was not as limiting as Plaintiff testified. (Tr. 285-287).

24.     Plaintiff also contends that the ALJ misrepresented the record in order to support his finding questioning Plaintiff's motivation to work. The ALJ did not misrepresent the record, he quoted from it. (Tr. 281).

25.     Accordingly, I find that the ALJ did apply correct legal principles in assessing Plaintiff's credibility, and that substantial evidence supports his determination.

## Recommendation

26.     For the reasons stated above, I recommend that Plaintiff's Motion to Reverse the Commissioner's Final decision and remand for the payment of benefits, or in the alternative, remand for rehearing be denied, and that the Commissioner's decision, denying benefits be upheld.


**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**

APPENDIX A
May 7, 1993 –  John M. Bennett, II,  M.D.
Medical Assessment of Ability to do Work-Related Activities (Mental) for Jamie Ford
Tr. 200-204

| Making Occupational Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very good | Good | Fair | Poor or None |
| Follow work rules | X | | | |
| Relate to co-workers | X | | | |
| Deal with the public | X | | | |
| Use Judgment | | X | | |
| Interact with supervisor (s) | X | | | |
| Deal with work stresses | | | X  <------ | --->X |
| Function independently | | | | X |
| Maintain attention/concentration | | | | X |

"Jamie functions best in structured setting.  In this environment, she can do just about anything.  At the present time, she will not be able to manage conflict or stress."

| Making Performance Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very Good | Good | Fair | Poor or None |
| Understand, remember & carry out complex job instructions | | | X | |
| Understand , remember & carry out detailed, but not complex, job instructions | | X | | |
| Understand, remember & carry out simple job instructions | X | | | |

"Ability to follow directions will deteriorate in presence of conflict or stress, and in direct proportion to amount of conflict/stress."

| Making Personal-Social Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very Good | Good | Fair | Poor to None |
| Maintain personal appearance | | X | | |
| Behave in an emotionally stable manner | | | X | |
| Related predictably in social situations | | | X | |
| Demonstrate reliability | | | X | |

"Pt. has had trouble getting to scheduled appointments.  This has improved recently, even under stress."
"Jamie will not do well where she has to make a good appearance.  She does not feel good about her appearance at the present time."

APPENDIX B
December 26, 1996 – Harry C. Linneman, PhD
Medical Assessment of Ability to do Work-Related Activities (Mental) for Jamie Ford
Tr. 325-328

| Making Occupational Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very good | Good | Fair | Poor or None |
| Follow work rules | | X | | |
| Relate to co-workers | | X | | |
| Deal with the public | | X | | |
| Use Judgment | | X | | |
| Interact with supervisor (s) | | X | | |
| Deal with work stresses | | | X | |
| Function independently | | X | | |
| Maintain attention/concentration | | | X | |

"(1) WAIS-R subtest score pattern (i.e., low digit span) suggests problems in attention/concentration which significantly impair performance.
"MMPI profile indicates very poor stress tolerance, and a high overall level of emotional distress."

| Making Performance Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very Good | Good | Fair | Poor or None |
| Understand, remember & carry out complex job instructions | | X | | |
| Understand , remember & carry out detailed, but not complex, job instructions | X | | | |
| Understand, remember & carry out simple job instructions | X | | | |

"Complex instructions & complex tasks (e.g., block design) were relatively poor performance areas, compared to her excellent skill with relatively uncomplex sequences."

| Making Personal-Social Adjustments | | | | |
|---|---|---|---|---|
| | Unlimited/ Very Good | Good | Fair | Poor to None |
| Maintain personal appearance | | X | | |
| Behave in an emotionally stable manner | | X | | |
| Related predictably in social situations | | | X | |
| Demonstrate reliability | | | X | |

"Ms. Ford has serious problems with trust, interpersonal conflict and anger -- all roughly related to her depression -- but also suggested as more general problems in personality functioning on the MMPI."